[ No. 36467.    Department Two.    August 15, 1963. ]

ROBERT HURET, *Respondent*, v. DAVID M. TEUFEL *et al.*, *Appellants.**

*O'Leary, Meyer & O'Leary*, for appellant.

*Philip W. Richardson*, for respondent.

FINLEY, J.—This is a lawsuit for personal injury damages, resulting from an allegedly unlawful assault upon the plaintiff while he was a patron of the "M" Cafe in the small town of Rainier, Thurston County, Washington.

The plaintiff testified that, after work, followed by several mixed drinks with his boss, he arrived home, spruced up a bit, and, as was customary with him, went to the "M" Cafe for coffee and also to pay a small bill he owed the lady proprietress of that establishment. She advised him that the "till" was inadequate to cash the plaintiff's $40 paycheck and suggested that her landlord (Mr. Teufel), owner and operator of the adjacent tavern, might

*Reported in 384 P. (2d) 605.

cash it. The plaintiff was dubious in view of past and continuing strained personal relationships with the tavern operator, but acquiesced in the suggestion of the cafe proprietress, and endorsed the check, admitting somewhat apologetically that he was "not much of a writer." The proprietress took the check to the adjacent tavern. Shortly thereafter, she returned and informed the plaintiff that Mr. Teufel, the tavern operator, had been uncomplimentary about the plaintiff's endorsement of the paycheck and had refused to cash it. Almost simultaneously, Mr. Teufel appeared in the "M" Cafe. He confronted the plaintiff and, in picturesque but forceful and certainly not uncertain language, demanded peremptorily that the plaintiff leave the premises forthwith. The plaintiff demurred, implying that he was a patron of the establishment, was in good standing, and that he liked his coffee and wished to finish the cup before him. During this exchange of views, the plaintiff allowed that he was entitled to at least a semblance of some civil rights respecting his patronage of the "M" Cafe. Mr. Teufel, stopped in his tracks for the moment by this not so assuming but deft demurrer, left the premises, stating that he would be back and that the "plaintiff had better not be there." According to the plaintiff, his coffee cup was thereupon refilled by his personal and sometimes social friend, the lady proprietress; but very shortly thereafter Mr. Teufel returned, appearing considerably concerned, and "rushed at the plaintiff like a bull," and, without further niceties or notice, he launched an attack in force upon him, aided and abetted by a blackjack of not unsubstantial physical characteristics. The plaintiff stated that he was dazed by this onslaught. He remembered only the scuffling and being pushed and shoved toward the front door of the establishment. According to other witnesses, there the plaintiff made a last stand, but haplessly his hand slipped on the side of the door. It had been opened at 180 degrees, in a position paralleling the adjacent windows of the cafe. The plaintiff's hand and arm went through the glass of the door, as well as the glass of the window, and

he fell to his knees in a dazed condition. His right arm, at the elbow, was badly cut and lacerated.

Apparently, Mr. Teufel's aplomb as a bouncer, as well as his bar-tending amiability, if any, was considerably "upsettled." Perhaps it was from personal predilections against Mr. Huret, or perhaps Mr. Teufel was still too close to the "heat of battle" and propelled by continuing shots from an overexuberant adrenal gland. In any event, at this juncture in time, place and things, Mr. Teufel expostulated with those present who were urging the immediate need of a doctor to provide care (ostensibly equal at least to the standards of the community) for Mr. Huret who was bleeding profusely and was considerably *hors de combat*. Mr. Teufel's expostulation was somewhat colloquial, but nevertheless descriptive and meaningful. His strong words certainly were disparaging and cast considerable doubt on the legal implications of the matter of Mr. Huret's paternity. These strong, forceful Anglo-Saxon words were coupled with a recommendation by Mr. Teufel, unseemly in a purely objective sense and perhaps a bit unsporting under the circumstances; namely, that it would be better if the vanquished Mr. Huret was left to "bleed to death."

The plaintiff testified that the extent of his injuries was not discovered by him until sometime later when he became conscious at the hospital. He further testified that, being right-handed, the injury to his right arm had substantially incapacitated him from doing common labor which is his calling, and that he has accordingly suffered a substantial loss of earnings and impairment of earning capacity. His inability to perform common-labor ditch digging was substantiated by another witness. Mr. Huret testified that the arm pained him most of the time and, occasionally, almost more than he could endure; that it was very weak, and simply would not function, despite the fact that he had attempted to rehabilitate the arm through exercises prescribed by his doctor. Other witnesses corroborated plaintiff's testimony as to the altercation. One

testified that he remembered seeing the blackjack in Mr. Teufel's possession.

The testimony of Mr. Teufel was in considerable conflict with that of the plaintiff. Among other things, it was to the effect that he had evicted the plaintiff, not in the capacity as landlord or owner of the building occupied by both the cafe and the tavern, but upon the request of the cafe proprietress who had stated specifically to Mr. Teufel that the plaintiff had over imbibed, was troublesome, and that she would like to be rid of him. Mr. Teufel frankly admitted having a blackjack in his back pocket as part of his customary equipment as a tavern operator in the particular locale. He denied using it on this occasion and upon Mr. Huret. The blackjack was admitted in evidence, marked as an exhibit of the plaintiff. In passing, we can observe that the blackjack has the appearance of being well constructed and an especially effective or efficient instrument of its general class.

The deposition testimony of the cafe proprietress corroborated, in part, the testimony of Mr. Teufel. It was to the effect that she had asked him *to request Bob* (the plaintiff) to leave the cafe, as she was expecting some P.T.A. ladies to visit the cafe for coffee after their evening meeting in the town of Rainier. Mr. Teufel, in his testimony, also referred to the anticipated visit of the P.T.A. ladies to the "M" Cafe.

Apropos of the damages awarded by the jury and the plaintiff's claim respecting loss of earnings and impaired earning capacity, evidence was adduced that Mr. Huret had been cited several times for nonsupport of his two children. Furthermore, that on such instances his defense was financial inability, occasioned by unemployment and inability to get profitable work. Incidentally, these events had occurred prior to the time of Mr. Huret's injury.

The three questions presented in this case are: (1) Whether Mr. Teufel was authorized by the cafe proprietress to evict the plaintiff; (2) whether he used excessive force in this connection; and (3) whether the damages awarded by the jury were excessive. The trial judge submitted the

case to the jury under instructions indicating that the testimony was conflicting, and that the question was an open one for the jury as to whether the assault by Mr. Teufel was unlawful, or whether he was in fact authorized by the cafe proprietress to evict Mr. Huret, and, in any event, whether more force than was necessary and proper had been used. The jury's verdict, awarding damages of $5,250, was for the plaintiff. The defendant's motion for a new trial, or in the alternative for judgment n.o.v., was denied. This appeal followed.

The assignments of error are directed mainly at two aspects of this case as follow: (1) Whether certain instructions given by the trial court and those requested by the defendant but not given resulted in error; i.e., submission to the jury of the question of Mr. Teufel's authority or his authorization by the cafe proprietress to evict Mr. Huret; and (2) whether, in any event, excessive force was used. Appellant also claims as error that the award of damages was excessive and not supported or justified by the record.

As to the above indicated aspects of this case and the appellant's claims of error, the trial judge, in his oral decision, stated:

"My feeling on this whole matter is this, that I think in each of these things were not purely—I don't think that any of them is just a pure question of law, and that I am referring primarily to the one of privileged assault. I am thinking that is more of a mixed question perhaps. I was feeling it is a question, on all of these points that have been raised, is a question that should have been determined by the jury. If I now would substitute my judgment for that of the jury and say here a verdict of $5,250.00 is a result of passion and prejudice, no, I don't believe so. And I say that because the value of the dollar is so thoroughly devaluated now. I think that most people who are employed, even in menial manual labor, who work steady in the year, their earnings are not too far off from that in one year's time. Certainly I can't outguess you or anybody else as to just how the jury might have arrived at that figure, because it is an even number. There were a few bills that went in. But you can look at it. They gave it to him for pain and suffering. You can look at it that they gave it to

him because they felt here is a loss of earnings of approximately $750.00 a year for a period of 7 years, from the time of the injury, and I don't think that the amount is untenable.

"There was some argument that the doctor was not there. I don't think that makes too much difference in this case. Here is the plaintiff's condition, is such that he showed them, he showed them the scar on his arm. When they can demonstrate that to the jury it doesn't take a doctor to tell the jury, well, the man got cut and ended up in the hospital. It is obvious for the ordinary layman, and you have his own testimony, and, of course, he is entitled to tell the jury how he feels and what he can do with that arm. Now they did it. I think it was the function of the jury to determine what should be done."

■ We agree with the evaluations of the trial judge on the basis of a careful reading and checking of the record in this case. The evidence was conflicting, the questions involved were essentially factual and were submitted under appropriate instructions for determination by the jury. The damages awarded, as indicated by the trial judge, were within the range of the testimony and the prerogative of the jury.

We find no merit in appellants' assignments of error. The judgment should be affirmed. It is so ordered.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.